Our first case in the morning is People in the State of Illinois v. Michael Henley. For the appellant, Mr. Kirshner, and the appellee, Ms. Ambrose, you may proceed. Mr. Kirshner This case presents squarely, I believe, an opportunity to review whether the requirements under People v. Orr are a meaningful opportunity to contest a summary suspension or a reality. I say that because the court entered a directed finding following the close of evidence by the defendant in this case, the petitioner, of course, in the summary suspension proceeding. And the only evidence the court had before it was unrebutted, uncontradicted, unimpeached, and clearly established not only a prima facie case, but the lack of probable cause or reasonable suspicion to have arrested the defendant for driving under the influence of alcohol. And clearly under People v. Orr would have shifted the burden to the state to produce evidence of a breath test result in excess of .08. The evidence produced before the circuit court included the testimony of the defendant, qualified as an expert by the circuit court on behalf of the defendant, Dr. Henson, a correctional officer who was with the defendant for 20 to 30 minutes immediately following his arrest, and two individuals who were with the defendant the entire evening, both of whom testified that the defendant participated in a weekly pool league for over three hours, consuming only one glass of bourbon the entire week. No other alcohol was consumed by this defendant. There was a video which by agreement encompassed the time period up to the defendant's arrest, but did not include any viewing by the court for purposes of that hearing of any HDN or PBT testing during the course of that traffic stop. So the video was limited essentially to the stop, the interaction between the officer, and the field sobriety testing, excluding that HDN and PBT. With respect to the testimony adduced and the only evidence upon which the court made a decision in this case, Carrie Vogus was the correctional officer who was with the defendant. She testified approximately 20 to 30 minutes, or maybe more, in close proximity at the jail, well-lit conditions. She testified that there was no evidence of mental or physical impairment to the defendant, his speech was not slurred, his eyes were not glassy, watery, bloodshot, and in fact there were no visible signs of alcohol consumption. That testimony by the correctional officer was both unimpeached and was corroborated by the remaining testimony. There was testimony from Jerry Drollinger, who was one of the individuals involved in the pool league, and Mr. Drollinger's father, Toby, who was also involved in that pool league. Over a period of more than three hours, my client was engaged in this pool league, there was no evidence of any impairment to him, he consumed one drink, and only one drink, there was no... The portable breath test is not evidence of impairment? The portable breath test was not before the trial court by virtue of the fact that the parties agreed that the court would consider the video excluding the PBT and HGM. And that is found in the records... So evidence of the reading of the PBT was not before the trial court? That is correct, Your Honor. That's found at page A9 of the appendix, where before the tape was played, this was the colloquy that occurred. Again, Judge, I'm offering this, referring to the video. I can stop and start it, but I'm offering it with the exception of this PBT and HGM. It was typed as HTM, but it says sick body. Where did you say that was? A9 of the appendix, I believe, Your Honor. And the court's response was, oh, I understand that. Let me make sure of my page. That's correct, A9, beginning at line 3. So we have a set of circumstances where there was absolutely no evidence of any impairment. There was affirmative evidence offered on behalf of the defendant who testified probatively with that testimony offered by Mr. Drollinger and his father, Toby, that he had consumed only one drink the entire evening, that he had been involved in this bully. The video also demonstrated that there was no impairment to his driving. He was essentially stopped for speeding. There was no weaving, no drifting. He didn't cross any lane markers. He stopped appropriately, pulled off appropriately. There was no erratic driving noted whatsoever. The officer essentially, as is often the case, when he approached the vehicle, asked if he had been drinking. The defendant said he had one drink. There's some confusion on the video. The audio's not clear whether he said one beer or one drink. The defendant testified he had one drink, and it was a glass of bourbon that was corroborated by both the Drawlingers and by the defendant himself. But there was no evidence and no suggestion that it was any more than that one alcoholic beverage. It was the trooper who, in response to the defendant's statement, said one beer is a question. But regardless of whether it was a beer or a bourbon, there was no evidence of anything other than that one alcoholic beverage. The testimony of Dr. Henson, who was qualified by the circuit court as an expert witness, and this all becomes important because of the bodice decision, which is also cited in the brief, that when evidence is adduced before the circuit court, and that evidence is unrebutted, unimpeached, corroborated, as it was in this case with three lay witnesses, the Drawlingers and my client, a correctional officer, and an expert witness, the circuit court really isn't free to just disregard everything and arbitrarily say that it, in this case Judge Klaus, believed that there was reasonable grounds. There was no specific findings of fact by the court. In fact, the courts on the reasonable grounds or probable cause issue merely said that the video showed reasonable grounds. There were no further findings. No effort to discuss the credibility of any of the witnesses. He never commented that the defendant's testimony was not credible. He didn't comment on the testimony of the Drawlingers or the correctional officer, who probably had the greatest single opportunity over a span of time under the best conditions, in the closest proximity, without environmental factors impeding, without any claims of interest or bias, to note that my client had no indication of impairment and, in fact, no visible signs of alcohol consumption. The circuit court, in rejecting and finding against the defendant at the close of that evidence, really did what Orth cautioned against, and that is, as a matter of due process, shifting the complete burden of proof without any opportunity of the defendant to really contest the summary suspension, and avoided having the state meet its obligations under Orth to come forth with some evidence to justify the rescission of my, or the suspension of my client's driving privileges. We went a step beyond what was required in Orth by even offering expert testimony with respect to any purported breathalyzer results in anticipation of the state attempting to justify that testing. Dr. Henson, again, who was qualified by the circuit court as an expert, testified that, and this is actually in the record before this court, because I believe it was included as an exhibit, which was submitted to this court, there's an electronic cigarette which produces ethylene glycol. And Dr. Henson testified and explained that that ethylene glycol, which, when the electronic cigarette is utilized, is picked up on breathalyzer equipment and registers as alcohol, producing an erroneously high reading on any breath test devices, including the devices used in this case, because the breath testing devices are unable to distinguish the ethylene glycol from the alcohol which it is trying to register as part of that breath testing analysis. So we went beyond all of what Orth required. We had not only the defendant's testimony. Orth says that even credible testimony by a defendant is sufficient to shift the responsibility to the state to come forth with some evidence to justify and to prove that there was a breath test result greater than .08. We went beyond that. Not only do we have credible testimony from the defendant, and it was credible in part because, not simply the defendant's demeanor or clarity of his testimony, but because it was corroborated by two other lay witnesses who were with him that entire time, and a correctional officer, and an expert witness who also testified with respect to the field sobriety testing, and indicated, as noted on that video, that my client had had a prior knee injury. On the video, you can hear the defendant indicate that he's extremely uncomfortable because he needs to go to the bathroom, and the officer just kind of ignores that for the moment. But Dr. Henson testified, and the video demonstrates this, that his performance on the one-leg stand test was simply impeccable. It wasn't even something which could be criticized by the trooper involved in this case. The walk and turn was more difficult. He lost his balance at one point. But the issue, for purposes of the directive finding and for purposes of the summary suspension hearing, is whether the totality of the evidence was sufficient to allow the case to go forward and require the state to produce some evidence to justify that breath test result. And we clearly, clearly met that burden of proof, if worth really means anything. So, Mr. Kirchner, let me ask you this. So the court is aware, and part of the allegations are that the defendant took a breath test and blew over 0.08? The court is aware from the petition to rescind, and the short answer is yes, because the court had before it evidence of the warning to motorists, the notice of summary suspension. The court was aware of the facts. But in terms of the record at that hearing, what the court was aware of was the petition and the fact that the defendant had submitted to a breath test result, which the defendant, through the petition to rescind, asserted and argued, both at the hearing and in the pleading, that that breath test result did not yield an accurate result in excess of 0.08. Great. So I guess what I'm getting at is your client, in the trial court, has the burden of making what's called a prima facie case to establish that the breath test was, I hate to say it this way, but is it your burden to show that the breath test was not valid before the state has to produce evidence to show it was? The answer would be no under Smolenski and Graney, which are both cited and referred to in the brief. Those cases specifically address this notion of whether a defendant, and Orth addresses this as well, whether a defendant, in attacking the summary suspension, must affirmatively produce evidence that a breath test result is erroneous before it can be shifted. I don't mean that your client would have the burden of showing that the machines weren't working or something like that, but because that reading came out of the machine and it was over the legal limit, your client has to come in and the burden is on your client to show that for whatever reason that can't be a correct reading because he was not intoxicated or impaired. I believe what Orth says, what Smolenski and Graney say, is that the defendant has to produce some evidence, which the court in Orth described as some credible evidence, including evidence from the defendant himself, that in fact the grounds which the petition assert, which could be probable cause or reasonable grounds for arrest, could be the warning to motorists, could be that he submitted to a breath test result, and that breath test result does not accurately reflect a result greater than .08. That evidence can be established even under Orth by the defendant's testimony. Now, of course, a defendant's testimony, if you take Orth at its word, a defendant's testimony would not include the ability to testify as an expert with respect to the machine or the certification of that machine within the 62-day period required by law. It would not be expected to, nor would it include the production of a log book evidencing certification of that testing process. Nor would it include evidence that the machine was operating properly at the time of the testing or that the operator was certified or licensed or that the operator conducted the testing in a manner consistent with the operation manuals and the administrative code. So the short answer to the question is no. We need not produce specific evidence about the erroneous nature of that test result, but must produce some evidence to demonstrate that in fact the defendant was not under the influence of alcohol and or the arrest was not supported by probable cause or reasonable suspicion because it's only at that prima facie case point that we're here on under the directed finding that under Orth the state must lay a foundation for the breath test result and demonstrate that that result was greater than .08. We, of course, then have an opportunity to rebut the state's evidence to cross-examine and the court would then have an obligation to determine whether or not there was a valid result in excess of .08. But it's the state's burden to lay that foundation and the Orth court talked about it in terms of due process. So we went beyond all of that by establishing through an expert qualified as such by the circuit court that any test result in this case, any test result on either the PDT or the breathalyzer equipment would have been tainted and would have yielded an erroneously high result. It would or could? Could. Didn't he testify that it could affect? Could. And when cross-examined, didn't he say, the first time I saw an electronic cigarette was two weeks ago, there are no scientific studies that establish this, and nobody knows if it did, in fact, affect. Nobody knows what the effect would be. I think that's partially accurate, but it is all... It might not be all that he testified to, but it's either accurate or it's not. That I would agree with. It is not all that he testified to. But again, our burden at that point is only to establish this prima facie case. What he also indicated was that the principles upon which the breath testing equipment operates, both the PDT and the breathalyzer equipment which was used at the Sheriff's Department, cannot distinguish between the ethylene glycol which is produced by the electronic cigarette and the alcohol which the machine is designed to test for. And nothing on cross-examination rebutted that. Not at all. You could say that the cross-examination rebutted tended to undercut his credibility, given that there were no scientific studies. This isn't something that had been tested before. It's just that based on his expert opinion, these two things, it can't distinguish. That seems to me to be the most important thing that he testified to. I agree. I wouldn't say that his credibility was undermined because he didn't attempt to exaggerate or attribute characteristics to his opinions or the analysis that he couldn't support. It didn't undercut his personal credibility or his credibility as an expert. It did, however, lessen the weight, given that there were, you know, you don't want to get into the, you know, is this generally accepted in the scientific community. I mean, I don't even know that it needs to go that far. But when he says, nobody's ever tested this before. There aren't any studies on this. And I think that's true with respect to the amount by which it may be overstated. So, for example, if the court had denied that motion for directed finding, the state then put on its experts to establish a foundation for the omission of the test results, and the test results were admitted, the court could have at that point, with that evidence before it, have said, I understand that the expert has testified that we can't determine the degree to which this has been overstated, but considering the totality of the evidence, the video, the testimony, all of the evidence before me, and now the establishment of the breath test result, I choose to find in favor of the state. That could have been a possible outcome depending upon the rest of the hearing. But we never got that far. And our position is that the requirements of ORTH were more than met in this case, and that the directed finding should have been denied. Mr. Kirchner, you indicated that you stopped the tape before the PBT and the HGN, but wasn't the HGN the first field sobriety test that the officer gave? If I indicated that, that would have been erroneous. What A9 demonstrates and what I intended to say, if I said it erroneously, I apologize. We didn't stop the tape before the PBT or the HGN. We stopped the tape following the field sobriety testing including that, so that none of the post-arrest portion of the video was ever considered or reviewed by the court. So the right to the jail and all of that? Correct. But the court did see the PBT test and saw all the field sobriety testing? The court saw that because, as a practical matter, it was impractical, and because there was an acceptance by the court that we were not tendering or putting before it the PBT or the HGN. Those have different requirements, and those were not before the court pursuant to A9 and not considered by it. And the court said, I understand that. So, as a practical matter, we could have tried to edit the tape. We could have tried to stop the tape, had the court recess, go fast forward through the HGN, have the court come back, the judge come back. But that wasn't necessary because that was the agreement. But the officer testifies. The officer never testifies. No, because it's only the tape. Okay. The officer never testifies, and the reports were never offered. There was nothing offered by the state in this case. So we would ask that the court enter an order reversing the decision of the trial court and remand proceedings. Ms. Ambrose? Mr. Kirchner has referred to the case as unrebutted, and that's simply not true. The court, at one point he refers to the correctional officer's testimony, Carrie Bogues, who booked the defendant as she had contact with him immediately following his arrest. And actually she said it could have been anywhere between midnight and 8 a.m. So she might have seen him as much as seven or eight hours after he was arrested, in which time she did not detect any signs of inebriation. So her testimony is kind of a wash. And the court found specifically that the expert witness' testimony, I think he said, amounted to nothing because he was so equivocal about exactly what the effects of this vapor cigarette would be. There was no, as he pointed out, there were no scientific studies. I found no cases whatsoever in any jurisdiction on a vapor cigarette and the effects that it might have, or anything on the regular Internet to support one way or the other what effect it might have. So the court wasn't convinced by his testimony and after seeing the videotape, it said that that clearly established reasonable grounds to determine that he was inebriated. So that's an implicit finding that the defendant's testimony and that of his friends, his pool buddies, was not credible. And the tape strongly supports that. Of course, Orth demands that it has to be credible testimony. And the tape shows him, he's a happy drunk, I mean, he's a nice drunk, but he's kind of singing and humming and acting rather silly when the officer asks him to produce his insurance card and he does produce one that has expired and he's humming, he's smoking a cigar when the officer stops him, which is rather unusual because he said he'd been smoking this vapor cigarette all night long, but yet when the officer stops him, he's got this smelly cigar which he asked him to either extinguish or throw away and I think it's a reasonable inference from that that he might have been smoking the cigar to mask the odor of alcohol on his breath. He also has a hard time once he gets out of the vehicle, the officer tells him to stand in front of the squad car, with his back to the squad car and he can't get those instructions correct for quite some time. He faces the back of his car, then he turns around a different direction, so he has to go through that several times and you've seen his performance on the field sobriety test. He performed poorly in my opinion after watching the tape on the walk and turn test, but when you watch him do that stand on one leg test, he's pretty good and the trooper admits he passed that test. Yes, but he didn't count correctly. Right, he didn't count correctly, but his balance and physical demeanor are excellent on that test. I want to ask you, what does it take to get to the point where the state's got to at least call the trooper or put on some evidence from the breath analysis operator that the machine was working correctly? Well, I guess you have to convince the court with credible evidence and once you get this tape into evidence, that's going to be a hard nut to crack. So if the judge, after viewing the tape, felt that the tape itself showed the defendant was impaired, then there's no burden on the state to come forward with, the burden doesn't shift in other words. No, it didn't in this case because the court said once it saw that tape, that kind of told the whole story to it. Even though, you weren't at the trial court, I suppose Mr. Kirchner was, but the tape that was part of the record is 45 minutes long. It has the whole ride to the jail on it. Yes, and I mistakenly did refer to the stuff that occurred on the ride back because at one point he has his expert witness say that there's a couple of points during the ride there where he seems to be bent over and you see this little black cylindrical object, but he keeps it in his mouth for all of one second, I mean according to the tape, and then at another point can't even tell if it's in his mouth or not. And of course the expert relied upon those indications to say that if he was smoking en route to the jail that that might have affected his blood alcohol result. It sounds like to me the trial judge did not view that portion of the tape where he's being transported to the jail. And again, I guess I missed that where I assumed that that's what the court had also considered, but so, and I guess he did not look at the portable breath test. So we would be limited to just considering the portion of the tape that the trial court viewed. Yes, if that's what the agreement was. Do you agree with Mr. Kirchner that the trial court did not take into consideration the results of the portable breath test? Well, again, I was, he says I can stop it and start it, but I'm offering it with the exception of the PBT and HTM. Well, I mean the state doesn't confirm that, and that's the extent of what record indication there is. He has his expert witness testify about the portable breath test results, and of course the court finds that the expert's testimony doesn't show that that was skewed. So presumably he's saying not to offer it. He's saying that the results are unreliable, and the court finds that that is not true because he doesn't seem, he does not believe the expert's testimony, and he also implicitly rejects the defendant's testimony about how much he had consumed. Also the defendant, and I did not hear this on the tape, and there were portions of the tape that were very difficult for me to hear. But apparently there is some interchange between the officer and the defendant about do you think you're inebriated, and the defendant says, well, my allergy pill still seems to be working. So he doesn't deny that he might be under the influence. He attributes it to his allergy pill. Again, I could not hear that. I understand there aren't any cases on this, but it does seem unusual that you would qualify an expert, and nobody says that he's not an expert on breath tests, and this is what he does. And he says, I looked at the manual for this, I looked at the manual for that, I know what the substance is that's in this artificial cigarette. There's a problem with distinguishing, and it could affect the results. That sounds like enough to require some shift in either the burden of proof or at least the burden of going forward. What's unusual about this case, I think, isn't necessarily the final result. It's that we get to the result based on a direct finding. I mean, I could find, Mr. Expert, you're still an expert, but this is all still in a state of flux because this hasn't been tested. Nonetheless, you know more about this than most of the people in the courtroom, and you're saying it could affect the result. That's not like saying if it was raining, it could affect the result, or if it was, you know, something totally unknown to man up to that point. We're talking about this, I guess that's what it is, an artificial cigarette? Well, you take a little bit of nicotine and dissolve it in the ethylene glycol, and then it vaporizes, and you don't produce any smoke, it's simply a vapor. Vapor. And it gives them, I guess, you get the nicotine, but no tobacco. And you can smoke it in a bar? What the hell are they for? I guess it's a pacifier. I don't know. You said they get the nicotine? It takes a little amount of nicotine and it dissolves it in the ethylene glycol, and then it vaporizes it. So it's a smokeless cigarette? Correct. Okay. You just get a vapor. I guess you get the vapor because, you know, you get the sense of smoking, but you're not smoking. That's another thing during the, well, I'm not supposed to refer to the ride back, but you don't see any vapor coming out of the cigarette when he has it. So it works. Yeah. It's smokeless. That's good. But, again, back to my point. Not the judge finding, as Mr. Kirschner said, based on everything, I'm satisfied with the stop and the arrest. Rather, he says, you don't even have to put anything on. Directed finding. And that is in the face of this expert and the nurse, and you're right that you could say, well, that's a throwaway or a wash because it could be hours later. But it is at least some evidence. Yes. Coupled with doing a good job passing one test, failing another. I mean, it's just, it's like the evidence is. He didn't even, he had a hard time following instructions. That's true. I mean, and his kind of silly behavior. Humming and kind of singing. I mean, he's not real loud at singing. In other words, the trial court refers to. No, but he didn't go through. I know. He just said, this tape shows it. He was just a bottom line guy. And, well, the expert, too, with regard to, you know, he said he didn't know how much of the ethylene glycol would be in the system. He said if it was simply a puff, it could be diminished within a 20-minute period. Well, there was no evidence, was there, that I could find in the record of whether there was anything left in that electronic cigarette. Nobody testified to what was in that particular item. No. Nobody examined it, as far as I could tell from the record. Well, he said he had been smoking it all night, too, in the bar. So, I mean, I don't know, again, how long they last. I had no idea such a thing existed. Well, there's no evidence that there was anything in it anymore. No evidence one way or the other whether there was ethylene glycol nicotine in that particular exhibit or whether it was full or empty. I mean, there was no testimony about that. No. And, I mean, he said he simply looked at the instruction manual as to how it worked and said that theoretically, you know, this could skew the results. But he didn't know how much or if it definitely would. And, again, I found zip on Westlaw. I could not find anything even on the outside of Westlaw on vapor cigarettes. Are there any additional questions? Suppose we decided the court was wrong on the prima facie case ruling. Does this get remanded then for a further hearing? Yes. Yes, because the court never reached the second prong of the test. Thank you. I would concur in that last answer. If this court finds that a directive finding was inappropriate, it should be remanded for further proceedings. The state should put on its evidence. We should put on rebuttal. And then the court should make a decision based on the totality of the evidence before it. I don't believe counsel's correct in suggesting that there's anything in the record to suggest that the circuit court implicitly or impliedly rejected the defendant's testimony. And I disagree with the implication that if a trial judge finds that a video establishes probable cause, that that's the end of the road because under Horth and under all of our principles in this court system, that decision is reviewable and that's why we're here. So we would ask that the court reverse the ruling. We'll take this matter under advisement.